(No. 92-CV-0761—)

*In re* APPLICATION OF CATHERINE DIXON

*Order filed July 22, 1992.*
*Opinion filed December 2, 1994.*

LEGAL ASST. FOUNDATION OF CHICAGO (DEVEREUX BOWLY, of counsel), for Claimant.

ROLAND W. BURRIS, Attorney General (CHARLES A. DAVIS, JR., Assistant Attorney General, of counsel), for Respondent.

## ORDER

PER CURIAM

This claim arises out of an incident that occurred on September 19, 1991. Catherine Dixon, mother of the deceased victim, Kevin Dixon, seeks compensation pursuant to the provisions of the Crime Victims Compensation Act, hereafter referred to as the Act. 740 ILCS 45/1, *et seq*.

This Court has carefully considered the application for benefits submitted on October 18, 1991, on the form prescribed by the Attorney General, and an investigatory report of the Attorney General of Illinois which substantiates matters set forth in the application. Based upon these documents and other evidence submitted to the Court, the Court finds:

(1) That on September 19, 1991, the victim was shot by an unknown offender. The incident occurred near 1559 East 76th Street, Chicago, Illinois. Police investigation revealed that as the victim was waiting for the traffic light to change, he became involved in a verbal altercation with the occupants of the vehicle that had stopped next to his automobile. The victim then exited from his vehicle, armed with a baseball bat, and swung the bat in the direction of the window of the automobile in which the offender was a passenger. The offender then shot the victim. The offender has not been apprehended.

(2) That section 10.1 of the Act indicates factors used to determine entitlement to compensation. Specifically, section 10.1(d) of the Act states that an award shall be reduced or denied according to the extent to which the victim's acts or conduct provoked or contributed to his injury or death, or to the extent to which any prior criminal conviction or conduct of the victim may have directly or indirectly contributed to the injury or death of the victim.

(3) That it appears from the investigatory report and the police report that during a verbal altercation, the victim swung a baseball bat in the direction of the passenger window of an automobile in which the offender was a passenger. The offender then shot the victim.

(4) That the victim's conduct contributed to his death to such an extent as to warrant that the Claimant be denied entitlement to compensation.

(5) That this claim does not meet a required condition precedent for compensation under the Act.

It is hereby ordered that this claim be, and is hereby denied.

## OPINION

FREDERICK, J.

This claim arises out of an incident that occurred on September 19, 1991. Catherine Dixon, mother of the deceased victim, Kevin Dixon, seeks compensation pursuant to the provisions of the Crime Victims Compensation Act, hereafter referred to as the "Act." 740 ILCS 45/1, *et seq*.

This Court originally considered the investigatory report filed by the office of the Attorney General and preliminarily denied the claim pursuant to an order dated

July 22, 1992. The Claimant requested a hearing and an opportunity to present evidence.

The cause was tried before Commissioner Turner on January 22, 1993. Neither party filed a brief, although the Commissioner entered a docket entry on January 22, 1993, that "Parties will file briefs 60 days from the date they receive a hearing transcript." Commissioner Turner did not file a Commissioner's report prior to his resignation as a Commissioner.

The Court originally denied the claim as the Court found, based on the investigatory report and police report, that the victim swung a baseball bat in the direction of the passenger window of the vehicle in which the offender was a passenger. The offender then shot the victim. The Court, relying on section 10.1(d) of the Act, denied the award as the victim's acts or conduct provoked or contributed to his death.

As a preliminary matter, we find that police reports are admissible in Crime Victims Compensation Act cases. The statute makes it clear that all documents and information are to be considered by the Court even if that evidence would not be admissible in a court of law. Police reports, while not generally admissible in the circuit court or in the Court of Claims in general claims cases, nonetheless are admissible in Crime Victims Compensation Act cases because of the statutory language. Therefore, while the Commissioner found the reports inadmissible, we can rule in this case because the Commissioner made the police reports part of the record. We will consider the police reports in making our decision.

Claimant, Catherine Dixon, testified she was the mother of the victim, Kevin Dixon. She was called to the hospital on the afternoon of September 19, 1991. Her son

was dead from an apparent gunshot wound to the head from a small handgun. The police told her that her son had been shot in a drive-by shooting. Mrs. Dixon was not present at the shooting. She did not know her son to keep a baseball bat in his car and had never seen him threaten anyone with a baseball bat. The gunshot to her son that she saw was by the eyebrow.

The Claimant also called Reverend Joseph J. Rainey to testify on her behalf. On September 19, 1991, a member of the church came to him and told him that Kevin Dixon had been killed over on 76th Street. Reverend Rainey went to the scene of the shooting. When he arrived, the body had been moved. There were people standing around. Reverend Rainey saw Kevin's car and a couple of police officers around it. The car was parked against the curb. He saw no baseball bats. He was not present when Kevin was killed. The police report lists the offense as homicide/1st degree murder. The report also indicates the victim sustained a single gunshot wound to the right side of the head. The victim was shot while standing between the two cars and fell to the ground outside his driver's door. A baseball bat was recovered at the scene. The report lists witnesses as Sharon L. Jones and Robert A. Warmack, Johnny Smith, Michelle Davis-Balfour, and Johnny Kenniel. Sharon Jones told the police investigator that on September 19, 1991, Kevin Dixon drove up and asked her and her boyfriend, Johnny Smith, if they would follow him so he could drop his car off to be fixed and they would then give him a ride home. They agreed and followed Kevin Dixon. They were headed east on 76th Street and stopped at a stoplight. To the left of Kevin was a green Chevrolet. She saw Dixon reach into the back seat and then get out of the car. Kevin was looking toward Sharon Jones. She heard a shot and saw Kevin

fall on his face alongside of his car. Just prior to the shooting, she saw the passenger of the offender's vehicle lean toward the driver. She saw the passenger shoot Kevin. Robert Warmack was sitting in his car approximately four cars behind Kevin's car. He heard a shot. He saw the victim fall to the ground. The offender's vehicle then fled south on Stony Island. Neither witness Jones nor witness Warmack could recall seeing the victim with a bat in his hand.

Michelle Davis Balfour was Kevin Dixon's girlfriend. She apparently was not present during the incident. The police evidently were not able to locate Johnny Smith [Kenniel] on September 19, 1991. The report indicates a baseball bat was recovered on the scene alongside the victim. The reports also indicate that the victim sustained a gunshot wound to the right side of the head approximately three inches above the right ear.

Johnny Kenniel, who was referred to as Johnny Smith previously herein, was interviewed on September 20, 1991. He indicated he was a passenger in the Sharon Jones vehicle. He observed Kevin's vehicle stopped at the stoplight with the offender's vehicle next to it. Their vehicle was right behind Kevin's vehicle. He observed a verbal altercation between the people in front of him. He saw Kevin reach into his rear seat and then exit from his vehicle with a baseball bat in his hands. The victim then swung the bat in the direction of the front passenger window of the vehicle stopped to the north of the victim. The passenger in the vehicle then leaned toward the driver and fired one shot from a handgun at Kevin. Kevin then fell to the ground. Kenniel then chased the other vehicle but lost it. He went to the hospital and then a liquor store to calm his nerves.

The Crime Victims Compensation Act is a secondary source of compensation. (*In re Application of Lavorini*

(1989), 42 Ill. Ct. Cl. 390.) Section 4.1 of the Act requires the Attorney General to investigate all claims and prepare and present a report of each applicant's claim to the Court of Claims prior to the issuance of an order by the Court. The Attorney General is also charged with the duty to represent the interests of the State of Illinois in any hearing before the Court of Claims. Section 8.1 of the Act indicates that no award of compensation shall be made for any portion of the applicant's claim that is not substantiated by the applicant.

Section 9.1 of the Act states that in determining whether an applicant is entitled to compensation, the Court of Claims shall consider the facts stated in the application, other material and information submitted, and the report of the Attorney General. Section 12.1 allows for awards without hearing and such procedure disposes of the vast majority of these crime victims claims.

As applicable to the present case, section 13.1 of the Act states:

"a) A hearing before the Commissioner of the Court of Claims shall be held for those claims in which:

° ° °

(3) a claim has been disposed of without a hearing and an applicant has been denied compensation or has been awarded compensation which he thinks is inadequate and he petitions the Court of Claims for a hearing within 30 days of the date of issuance of the order sought to be reviewed. The petition shall set forth the reasons for which review is sought and a recitation of any additional evidence the applicant desires to present to the Court. ° ° °

b) At hearings held under this Act before Commissioners of the Court of Claims, any statement, document, information or matter may be received in evidence if in the opinion of the Court or its Commissioner such evidence would contribute to a determination of the claim, regardless of whether such evidence would be admissible in a court of law."

We could dispose of this claim solely on the basis that Claimant failed to file her petition within 30 days of the issuance of the Court's order denying the claim. The

Court's order denying the claim was entered on July 22, 1992. The petition for hearing was filed August 26, 1992. However, because of the arguments raised by counsel in the arguments before the Commissioner, we choose to make some additional observations. The late-filed petition filed by Claimant indicated a request for a hearing. It further indicated that Claimant felt the decision was based on hearsay and that there was evidence the victim was shot in the back of the head and therefore not a threat to anyone.

On July 22, 1992, the Court made certain findings based on the police reports and investigatory reports. The only issues before the Commissioner were whether the victim's conduct contributed to his death to such an extent that the Claimant be denied entitlement to compensation for failure to meet a condition precedent for compensation under the Act and the amount of the funeral bill. The Claimant failed to present any evidence which touched on these issues even though several eyewitnesses were listed in the police reports. The Claimant was granted the opportunity to present medical evidence, forensic evidence or personal witnesses to offer any evidence contrary to the findings made by the Court. Claimant offered no such evidence. *In re Application of Lavorini* (1989), 42 Ill. Ct. Cl. 390.

The Claimant had the burden of proof to prove her claim and failed to do so. (*In re Application of Bavido* (1992), 44 Ill. Ct. Cl. 449.) Wherefore, the petition having been untimely filed and Claimant having offered no evidence contrary to the record herein which supports the conclusion that the victim's conduct contributed to his death as previously found by this Court, this claim is denied.